**COMMUNICATIONS WORKERS OF AMERICA, LOCAL 5714 and Communications Workers of America, Local 5800, Plaintiffs-Appellants,**

**v.**

**Marilyn F. REEB and Sylvia T. Megnis, Defendants-Appellees.**

**No. 49A02-8707-CV-270.**

Court of Appeals of Indiana, First District.

March 15, 1988.

John F. Schmitt, Judith T. Kirtland, Lewis, Bowman, St. Clair & Wagner, Indianapolis, James B. Coppess, Communications Workers of America, Legal Dept., Washington, D.C., for plaintiffs-appellants.

Susan M. Mann, and Allen N. Smith, Jr., Moore, Smith & Bryant, Indianapolis, for defendants-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

This appeal involves the consolidation of two (2) cases brought by the Communications Workers of America, Locals 5714 and 5800 to enforce and collect fines imposed under the Union's constitution. Both cases were heard and decided by the Marion County Municipal Court. Local 5714 appeals from the trial court's grant of summary judgment in favor of Marilyn F. Reeb. Local 5800 appeals from the trial court's judgment in favor of Sylvia T. Megnis. In both cases the trial court ruled that the Union's claims violated the public policy of this state as codified in Indiana Code section 22-6-2-1 et seq. We reverse both decisions and remand for a trial on the merits of Local 5714's claim against Reeb and order judgment in favor of Local 5800 on the claim against Megnis.

## FACTS

On August 7, 1983, the Communications Workers of America Union, including Locals 5714 and 5800, commenced a nationwide strike against the Bell Telephone Systems, including the Indiana Bell Telephone Company. Marilyn Reeb and Sylvia Megnis allegedly crossed union picket lines and worked during the strike. Locals 5714 and 5800 pursuant to union rules charged Reeb

and Megnis with violations of the Union's constitution, Article XIX, section 1, which provides that members of the union may be fined for working during an authorized strike. Both Reeb and Megnis were given notice of their respective charge and hearing thereon. After the hearings before a union committee, both were found guilty of violating the Union's constitution and fined accordingly. The Locals demanded payment from Reeb and Megnis. Neither Reeb nor Megnis paid their respective fines.

## APPEAL BY LOCAL 5714

Local 5714 filed suit against Reeb, to collect the fine levied for crossing the picket line in violation of the Union's constitution. Thereafter, Reeb filed a motion for summary judgment on the ground that the Union's strike and fine for working behind picket lines violated Indiana's Public Utility Anti–Strike Act, Ind.Code § 22–6–2–1 et seq. Local 5714 responded and argued that the strike was protected under the Labor Management Relations Act of 1947, 29 U.S.C. § 141 et seq. (hereinafter LMRA) which pre-empted the Indiana Act. The Union also filed a motion for summary judgment and filed exhibits and affidavits to establish Reeb's status as a full member of the Union. Reeb filed a memorandum in opposition and an affidavit alleging non-membership. The trial court granted Reeb's motion for summary judgment and denied Local 5714's motion on the ground that the fines grew out of an illegal strike. The court stated:

> "It is clear from reading the statutes I.C. 22–6–2–1 *et seq.* that it is against the public policy of this state as expressed by the Indiana Legislature for employees of public utilities to strike. Therefore, this Court cannot enforce plaintiff's claim which is in clear violation of these statutes. Furthermore, to enforce plaintiff's claim would be to encourage the parties in the future to commit a Class B misdemeanor."

Record at 66. Local 5714 appeals from this ruling.

## APPEAL BY LOCAL 5800

Local 5800 filed suit to collect the fine levied against Megnis for crossing the picket line in violation of the Union's constitution. Although the original charges made before the union committee suggested Megnis worked for six (6) days in violation of the Union's constitution, the fine imposed and sought in court by the Union was for only two (2) days (*i.e.*, the days Megnis worked behind the picket lines prior to her August 15, 1983, resignation from Union membership). Although both parties filed motions for summary judgment, the trial court did not rule on the motions, and the case proceeded to trial. After Local 5800 presented evidence the trial court entered judgment in favor of Megnis. The trial court determined that the Union's claim violated the public policy of the state as provided in Indiana Code § 22–6–2–1. Local 5800 appeals this determination and judgment.

## ISSUES

Consolidated, three (3) issues are presented for review:

1. Whether the trial court erred by holding that the Union's claims for fines were prohibited by Indiana Code section 22–6–2–1 et seq.?

2. Whether Local 5714's claim for fines against Reeb is enforceable by a motion for summary judgment?

3. Whether Local 5800's claim for fines against Megnis is enforceable as a matter of law?

## DISCUSSION AND DECISION

*Issue One*

The Union argues that the trial court erred by relying on Indiana's Public Utility Anti–Strike Act, Ind.Code § 22–6–2–1 et seq. to hold that the claims for fines were unenforceable as violative of public policy. The Union argues that the Indiana statute is preempted by the National Labor Relations Act, 29 U.S.C. § 151 et seq. because the Indiana statute conflicts with the federal act. Thus, the Union argues that the trial court erroneously relied upon a stat-

ute that is void and unconstitutional under the Supremacy Clause of the United States constitution, Article VI, clause 2. The Union is correct. Therefore, the trial court's rulings rejecting the Union's claims for fines are reversed.

■ A state statute that encompasses and regulates the same area as a federal statute may be pre-empted and found unconstitutional under the Supremacy Clause of the United States Constitution. *Golden State Transit v. City of Los Angeles* (1986), 475 U.S. 608, 613, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616, 623; *Brown v. Hotel and Restaurant Employees and Bartenders Int'l Union, Local 54* (1984), 468 U.S. 491, 500–01, 104 S.Ct. 3179, 3185, 82 L.Ed. 2d 373, 382–83; *Amalgamated Ass'n of Street, Elec. Ry. and Motor Coach Employees of America, Div. 988 v. Wisconsin Employment Relations Board* (1951), 374 U.S. 74, 82, 83 S.Ct. 1657, 1662, 10 L.Ed.2d 763, 768 (*Bus Employees II); Amalgamated Ass'n of Street Elec. Ry. and Motor Coach Employees of America v. Wisconsin Employment Relations Board* (1951), 340 U.S. 383, 399, 71 S.Ct. 359, 368, 95 L.Ed. 364, 378 (*Bus Employees I*). In *Golden State Transit,* the United States Supreme Court outlined the principles of pre-emption as applied to the NLRA as follows:

"Last Term, in *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. [724], 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), we again noted: 'The Court has articulated two distinct NLRA pre-emption principles.' *Id.,* at [748], 105 S.Ct., at 2394. See, also, *Belknap, Inc. v. Hale,* 463 U.S. 491, 498–499, 103 S.Ct. 3172, 3176–3177, 77 L.Ed.2d 798 (1983). The first, the so-called *Garmon* pre-emption, see *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed. 2d 775 (1959), prohibits States from regulating 'activity that the NLRA protects, prohibits, or arguably protects or prohibits.' *Wisconsin Dept. of Industry v. Gould, Inc.,* 475 U.S. [282], [286], 106 S.Ct. 1057, 1061, 89 L.Ed.2d 223, (1986). The *Garmon* rule is intended to preclude state interference with the Labor Board's interpretation and active enforcement of the 'integrated scheme of regulation' established by the NLRA. *Id.,* at [289], 106 S.Ct., at 1062. See *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S., at [748–49] and n. 26, 105 S.Ct., at 2394 and n. 26 (1985).

"This case, however, concerns the second pre-emption principle, the so-called *Machinists* pre-emption. See *Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). This precludes state and municipal regulation 'concerning conduct that Congress intended to be unregulated.' *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S., at [749], 105 S.Ct., at 2394. Although the labor-management relationship is structured by the NLRA, certain areas intentionally have been left ' "to be controlled by the free play of economic forces." ' *Machinists,* 427 U.S., at 140, 96 S.Ct., at 2553, quoting *NLRB v. Nash–Finch Co.,* 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed. 2d 328 (1971). The Court recognized in *Machinists* that ' "Congress has been rather specific when it has come to outlaw particular economic weapons," ' 427 U.S., at 143, 96 S.Ct., at 2555, quoting *NLRB v. Insurance Agents,* 361 U.S. 477, 498, 80 S.Ct. 419, 421, 4 L.Ed.2d 454 (1960), and that Congress' decision to prohibit certain forms of economic pressure while leaving others unregulated represents an intentional balance ' "between the uncontrolled power of management and labor to further their respective interests." ' *Machinists,* 427 U.S., at 146, 96 S.Ct., at 2556, quoting *Teamsters v. Morton,* 377 U.S. 252, 258–259, 84 S.Ct. 1253, 1257–1258, 12 L.Ed.2d 280 (1964). States are therefore prohibited from imposing additional restrictions on economic weapons of self-help, such as strikes or lockouts, see 427 U.S., at 147, 96 S.Ct., at 2556, unless such restrictions presumably were contemplated by Congress. 'Whether self-help economic activities are employed by employer or union, the crucial inquiry regarding pre-emption is the same: whether "the exercise of plenary state authority to curtail or entirely prohibit self-help would frus-

trate effective implementation of the Act's processes." ' *Id.*, at 147–148, 96 S.Ct., at 2557, quoting *Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 380, 89 S.Ct. 1109, 1116, 22 L.Ed.2d 344 (1969)."

*Golden State Transit*, 475 U.S. at 613–15, 106 S.Ct. at 1398–99, 89 L.Ed.2d at 623–24. Under the foregoing principles a state law may be declared pre-empted and unconstitutional, but only to the extent that the state law is inconsistent with or conflicts with the federal law and its objectives. *Bus Employees II*, 374 U.S. at 82, 83 S.Ct. at 1662, 10 L.Ed.2d at 768; *Bus Employees I*, 340 U.S. at 399, 71 S.Ct. at 368, 95 L.Ed.2d at 378.

In *Bus Employees I* the United States Supreme Court recognized that the pre-emption doctrine prohibited the application of a state statute that conflicts with federal law. *Bus Employees I*, 340 U.S. at 388–89, 71 S.Ct. at 362, 95 L.Ed. at 372. The Supreme Court held that Wisconsin's Public Utility Anti–Strike Act conflicted with the provisions of the NLRA and the LMRA 29 U.S.C. § 141 et seq. which protected the right of all unions to strike. *Id.* 340 U.S. at 399, 71 S.Ct. at 368, 95 L.Ed at 378. The Supreme Court opined that the legislative history of the LMRA indicated that no exception to this right would be made for public utilities. *Id.* 340 U.S. at 391–93, 71 S.Ct. at 364, 95 L.Ed. at 373–74. Thus, the Wisconsin statute was struck down as unconstitutional under the Supremacy Clause. *Id.* 340 U.S. at 399, 71 S.Ct. at 368, 95 L.Ed. 378.

■ The Indiana statute in the present case is similar to the Wisconsin statute in *Bus Employees I*, and equally conflicts with the provisions of the NLRA and LMRA. In fact, the Indiana statute makes it unlawful for a public utility to strike. Ind.Code § 22–6–2–13. This section clearly conflicts with the federal Acts which specifically protect every union's right to strike, including public utility unions. Thus, as was Wisconsin's statute in *Bus Employees I*, the Indiana statute is unconstitutional under the Supremacy Clause. Therefore, the trial court erroneously relied

upon the Indiana statute and its underlying public policy in entering judgment against the Union.

■ Although Megnis concedes the trial court relied upon an unconstitutional statute, Reeb argues that the trial court did not err by denying the Union's claims, because the trial court did not deny the Union's right to strike, only the right to collect fines. Reeb's argument fails. The right to collect fines is an integral part and parcel of the Union's right to strike. *N.L.R.B. v. Allis–Chalmers Mfg. Co.* (1967), 388 U.S. 175, 181, 87 S.Ct. 2001, 2007, 18 L.Ed.2d 1123, 1128. Denial of the Union's right to bring claims against its members to enforce fines for crossing picket lines would adversely affect the union's right to strike effectively as a bargaining agent. *Id.* Since the union's right to strike would be adversely affected, such a state law would conflict with the LMRA's protections. Thus, a state legislature could not pass a law preventing enforcement of fines as it would violate the same constitutional prohibition as the statute that attempts to prevent a public utility from striking. Likewise, a state court could not impose or enforce a public policy that conflicts with the LMRA. Furthermore, this court has held previously that fines imposed properly by a union may be collected against a full union member in our state courts. *Communications Workers of America, Local 5701 v. Drake* (1985), Ind.App., 487 N.E.2d 821, 824. Therefore, this court holds that the trial court's reliance on public policy to deny the Unions' claims against full union members for crossing picket lines was misplaced and improper.

*Issue Two*

Local 5714 argues that the trial court erred by denying the claim against Reeb for fines, and argues that the trial court should have granted Local 5714's motion for summary judgment. This court applies the same standard as the trial court in determining the propriety of summary judgment. *Brennemman Mechanical and Elec., Inc. v. First Nat'l Bank of Logansport* (1986), Ind.App., 495 N.E.2d 233, 240,

*trans. denied; First Savings and Loan Ass'n of Central Indiana v. Treaster* (1986), Ind.App., 490 N.E.2d 1149, 1151, *trans. denied.* Indiana Rules of Procedure, Trial Rule 56(C) provides the test for determining the propriety of summary judgment as follows:

"[Summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits filed pursuant to Trial Rule 5(D), together with any testimony show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The movant bears the burden of establishing the propriety of summary judgment. *Popp v. Hardy* (1987), Ind.App., 508 N.E.2d 1282, 1284. A summary judgment proceeding may not be used as an abbreviated trial, and all doubts must be resolved in favor of the non-movant. *Popp,* at 1284; *Brenneman,* at 240; *Treaster,* at 1151. However, once the movant establishes the propriety of summary judgment, the non-movant cannot rest on his pleadings but must present evidence which demonstrates the existence of a material issue of fact. *Popp,* at 1284. If a material issue of fact is not placed in issue, the reviewing court will uphold or order the grant of summary judgment. *Id.*

■ In the present case, Reeb argues summary judgment is improper because a material issue of fact exists as to whether she was a full union member at the time she crossed the picket line. Reeb is correct. Local 5714 submitted evidence in the form of affidavits and business records to establish that Reeb applied to become a member of the Union and paid dues through the time that she crossed the picket line. Record at 30 and 42. Reeb, however, denied union membership and filed an affidavit which stated that she never obtained a union card or considered herself to be a union member until August of 1986. Record at 62. Reeb also wrote the union expressing her belief that she was not a member of the union. Record at 37–38. Therefore, a material issue of fact exists as to whether Reeb was a member, and the trial court properly denied Local 5714's motion for summary judgment.

*Issue Three*

■ Megnis argues that the trial court could not enforce the fine imposed by the Union because the fine was imposed after she resigned from the union, and bases her argument upon her interpretation of this court's decision in *Communications Workers of America, Local 5900 v. Bridgett* (1987), Ind.App., 512 N.E.2d 195. Megnis's interpretation of our decision in *Bridgett* is mistaken. In *Bridgett,* this court held that the union could not impose fines against a member for actions the member took after resigning membership from the union. *Bridgett,* at 201. Megnis mistakenly interprets this holding to bar the union from imposing fines on a member who resigns, including fines which are imposed for actions the member took prior to resignation. Our holding is not this broad. The crucial inquiry with regard to membership status is not whether the person is a member of the union at the time the fines are imposed or enforced, but rather, whether the person was a member of the union on the date of the alleged union violation. *Booster Lodge No. 405, Int'l Ass'n of Machinists and Aerospace Workers v. N.L.R.B.* (D.C.Cir. 1972), 459 F.2d 1143 *affirmed* 412 U.S. 84, 93 S.Ct. 1961, 36 L.Ed.2d 764 (1973); *North Jersey Newspaper Guild, Local 173 v. Rakos* (1970), 110 N.J.Super. 77, 87, 264 A.2d 453, 458–59. The court of appeals in *Booster Lodge* addressed this issue, as follows:

"Approximately 58 of the employees who worked during the strike submitted their resignations to the Union *after* they had already engaged in some of the conduct proscribed by the International Union Constitution. In light of the above discussion regarding union authority over action undertaken by full members, we must concur in the Board's determination that the Union did not violate Section 8(b)(1)(A) *so far as its imposition of disciplinary fines concerned this preresignation conduct.* The fact that the fines were not officially imposed for

these pre-resignation breaches of Union regulations until after the strikebreakers had resigned, in no way negated the authority of the Union over these persons with respect to these acts, as the N.L.R.B. properly recognized.

'The provisions of a contract are enforceable, and a cause of action can be brought upon them, even after the expiration or termination of the agreement. The rights and duties created by an agreement are extinguished only prospectively by the termination thereof. Thus the termination of some employees' membership here did not affect the Union's subsequent assertion of rights which had accrued to the Union during their earlier period of membership, such as the right to discipline the employees for prior strikebreaking. The effect of these employees' resignations was only to extinguish the Union's future authority over them.'

Booster Lodge No. 405, International Association of Machinists and Aerospace Workers, AFL–CIO, 185 NLRB No. 23, 1970 CCH NLRB ¶ 22,259, at p. 28,693 (1970)."

*Booster Lodge* 459 F.2d at 1151–52. Similar reasoning was forwarded by the New Jersey Superior Court in *Rakos,* which held as follows:

"Under the interpretation sought by defendant it was within his power to 'wipe the slate clean' and avoid discipline for an offense already committed, by thereafter tendering his resignation. We disagree. Undoubtedly, a union member could prevent the union from levying a fine against him by resigning before engaging in conduct which would justify the imposition of such a fine. Here the resignation operated prospectively and could not cancel out what had gone before. The fact that the formal charges were not filed until after the date of the resignation did not detract from defendant's liability to discipline for their infraction."

*Rakos,* 110 N.J.Super. at 77, 264 A.2d at 458–59. Thus, the union could seek court enforcement of fines imposed for pre-resignation activity of a member, but not for post-resignation activity. However, to be enforceable the pre-resignation fines must be reasonable and nonarbitrary. *N.L.R.B. v. Boeing Co.* (1973), 412 U.S. 67, 75–78, 93 S.Ct. 1952, 1957–58, 36 L.Ed.2d 752, 758–60; *Allis–Chalmers,* 388 U.S. at 193, 87 S.Ct. at 2013, 18 L.Ed.2d at 1135; *Booster Lodge,* 459 F.2d at 1156; *Drake,* at 824; *Local 165, Int'l Brotherhood of Elec. Workers v. Bradley* (1986), 149 Ill.App.3d 193, 207–08, 102 Ill.Dec. 20, 30, 499 N.E.2d 577, 587; *Rakos,* 110 N.J.Super. at 91, 264 A.2d at 460–61.[1]

In the present case, Local 5800 argues that the trial court's refusal to enforce the fine was contrary to law because the fines were reasonable, non-arbitrary and based on only pre-resignation activity. Local 5800 is correct. Although the original charges sought a fine for the duration of the strike, which would have punished Megnis for both pre and post-resignation activity, the evidence established uncontradictorily that the fine imposed was only for pre-resignation activity. Megnis presented no evidence to establish that the union trial committee imposed a fine on post-resignation activity. The evidence established also that Megnis was afforded procedural due process and that the fine was not imposed arbitrarily. Megnis's only challenge to the union's claim involved the reasonableness of the fine. Megnis attempted at trial to show that the fine was excessive because the union allegedly fined her for days she did not cross the picket line. Although Megnis did not address this issue in her brief, this court must determine the reasonableness of the fines before reversal of the trial court is warranted. The union calculated the fine imposed on Megnis by determining the amount of income the party would have made on the dates of violation and by multiplying that amount by a sixty percent (60%) formula. This formula for imposing fines was rea-

---

1. This court rejects the Illinois Court of Appeals' interpretation of *Drake* and similarly rejects Lo-

cal 5800's argument that this court cannot review the reasonableness of the fines imposed.

sonable and fines calculated properly were enforceable under this formula. However, the union trial committee calculated the amount of the fine in the present case, Two Hundred Eighty–Eight Dollars and Fifty–Seven Cents ($288.57), based upon Megnis's salary for six (6) days (*i.e.*, the number of days the union prosecutor requested) and the evidence established only that Megnis violated the union's constitution on two (2) days. Accordingly, a fine of only Ninety–Six Dollars and Nineteen Cents ($96.19) could be enforced against Megnis. Therefore, this court orders a reduction in the fine to reflect the proper amount and holds the trial court's judgment against Local 5800 was contrary to law and is reversed.

Summary judgment in favor of Reeb reversed and remanded for further proceedings on the merits of Local 5714's claim for enforcement of a fine against Reeb.

Judgment in favor of Megnis reversed and judgment in favor of Local 5800 ordered in the amount of Ninety–Six Dollars and Nineteen Cents ($96.19) on the claim for enforcement of a fine against Megnis.

ROBERTSON, J., and SHIELDS, P.J., concur.