UNITED AUTOMOBILE, AIRCRAFT & AGRICULTURAL IMPLE-
MENT WORKERS OF AMERICA (C.I.O.–A.F.L.) LOCAL
756, Respondent, v. WOYCHIK, Appellant.

*November 6—December 2, 1958.*

530

For the appellant there was a brief by *Kivett & Kasdorf,* attorneys, and *Stephen C. deVries* of counsel, all of Milwaukee, and oral argument by *Mr. deVries.*

For the respondent there was a brief by *Charne & Kops* of Milwaukee, and oral argument by *Irvin B. Charne.*

HALLOWS, J. This case involved questions of the internal management of a labor union and its disciplinary power over its members. Such management and powers are governed

by the union's constitution and by-laws, which constitute a contract between the union and its members. *Local No. 261, International Union v. Schulze* (1958), 3 Wis. (2d) 479, 89 N. W. (2d) 191; *Herman v. United Automobile, A. & A. I. Workers* (1953), 264 Wis. 562, 59 N. W. (2d) 475.

The first contention of the appellant is that article 34, sec. 5 of the union's constitution is illegal and unenforceable because it violates sec. 8 (b) (2) of the Labor Management Relations Act, 61 U. S. Stats. at L., p. 141, 29 USCA, sec. 158 (Taft-Hartley Act). We cannot agree with this contention. Sec. 8 (b) (2) of the Taft-Hartley Act provides:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."

The Taft-Hartley Act deals with a union's activity in causing or attempting to cause an employer to discriminate against certain employees. The defendant is not such an employee. His membership in the union has not been terminated because of his failure to pay the fine. Even if the defendant's membership had been forfeited the Taft-Hartley Act does not prohibit forfeitures of union membership for failure to pay a fine whether or not a trial of the member is had. Nor does the language complained of in article 34, sec. 5 of the union's constitution amount to "cause or attempt to cause an employer to discriminate" within the meaning of the Taft-Hartley Act.

The second contention of the appellant is that the fine can only be imposed by the union by filing charges and by the conduct of a trial as required by article 48 of the union's constitution. We interpret article 34, sec. 5 of the constitution to mean fines may be levied upon compliance with the conditions therein stated without any trial, and where the application of such fine to a member is not in dispute the local union may forfeit the membership of such member for the nonpayment thereof without filing charges or conducting a trial under article 48. However, where a member disputes the application of the levy of a fine as to him then the union is required to file charges against such member and proceed with a trial under article 48 of the constitution.

There was no dispute over the application of the fine by the defendant. He contends he was never notified of the fine or its application to him prior to this suit. There was credible evidence to sustain the trial court in finding the defendant knew of the fine for his failure to picket. A union member who knows he has failed to fulfil his picketing assignment cannot claim he did not receive any notice of the levying of a fine when he refused to accept delivery of a certified letter containing the notice, which envelope was plainly marked as coming from the union, and when he refused to accept such notice when it was personally handed to him and was personally told of the fine by a union representative. There was also testimony that two other letters were mailed by the attorneys for the union to the defendant which he denied or could not remember receiving.

It is quite apparent from the evidence that the defendant knew about the fine. He testified he wanted to examine the books of the union to see where the strike money went and he was going to pay the fine at that time. At another time he testified that sometime after the strike he knew he owed the union money because of the gossip around the shop and when he was at a meeting the matter of fines was brought

up. He also testified: "I would have paid the fine if they would have showed me the records." Instead of disputing the fine which he knew was $8 or $9 the defendant did nothing about it until this suit was brought against him. By not disputing the application of the fine as to him the defendant foreclosed himself from a trial under article 48 and the benefits of the appeal procedure provided in the constitution.

There remains another question. Have the conditions in article 34, sec. 5, relating to the authority of the local union to levy fines been complied with? It is not disputed that the amount of the fine of $1 for each failure to picket meets that requirement. The $1 fine for each failure to picket was adopted by the union at a regular membership meeting on September 13, 1954. It is more strenuously argued that this fine was not approved by the International executive board. The trial court admitted in evidence a copy of the constitution of the International Union adopted at its March, 1953, convention over objection of counsel for the defendant. Included in this edition of the constitution were interpretations adopted at various times by the International executive board. These interpretations, so far as the facts of this case are concerned, consisted of prior actions taken in reference to article 34, sec. 5. Fines levied under this article for each picketing assignment missed were approved in 1945 and in 1946 prior to the adoption of the constitution. Such so-called interpretations were in effect at the time of the adoption of the constitution and continued in effect at the time of the strike. There is testimony to the effect that 45 or 50 local unions have operated under these interpretations as being official constructions of the constitution. The admission of these interpretations in evidence by the trial court was not error.

We do not construe the constitution to mean that each levy of a fine by a local union is required to be submitted to the International executive board for approval. Where the

International executive board has set a policy in approving a specific type of fine and such policy has not been modified or revoked, a local union may levy such a fine that meets such requirements. It would be unreasonable and unrealistic in the conduct of the affairs of the unions to require the International executive board to pass upon each and every levy of a fine in every instance.

Nor is it necessary to produce in evidence a certified copy of the minutes of each meeting of the International executive board approving each levy of a fine. The strike was sanctioned by the International. The local has the power to levy a $1 fine, and the International executive board had previously approved such fine for failure to picket. The plaintiff union adopted a levy of such fines for this strike. Any reasonable or permissible construction which an organization or a union gives to its own constitution, laws, or rules will govern unless clearly subversive of personal or property rights. *Callahan v. Order of Railway Conductors* (1919), 169 Wis. 43, 171 N. W. 653; *Herman v. United Automobile, A. & A. I. Workers* (1953), 264 Wis. 562, 59 N. W. (2d) 475. The construction given to the constitution by the interpretations in this case are not subversive of any such rights of the plaintiff.

We conclude that the circuit court was correct in affirming the judgment of the civil court of Milwaukee county in favor of the plaintiff.

*By the Court.*—Judgment affirmed.

BROWN and FAIRCHILD, JJ., took no part.