# WALSH v. COMMUNICATIONS WORKERS OF AMERICA, LOCAL 2336

[No. 104, September Term, 1970.]

*Decided November 16, 1970.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Thomas P. Smith,* with whom were *William L. Kaplan, Karl G. Feissner, Fred R. Joseph* and *Andrew E. Greenwald* on the brief, for appellant.

*Amicus Curiae* brief filed by Local 2108, Communications Workers of America, *Matthew A. Kane* and *Kane & Koons* on the brief.

*John T. Bell,* with whom were *Charles W. Bell, Frank S. Cornelius* and *Bell & Bell* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Appellant Walsh, a member of the Communications Workers of America, Local 2336, disapproved of a strike called by the Union and worked during the strike for his employer, the Chesapeake and Potomac Telephone Company, earning some $400.00. This violated the provision of Art. XIX, § 1 (e) of the Union constitution, which provides that:

> "Members may be fined, suspended or expelled by the Locals in the manner provided in the Constitution for any of the following acts:
>
> * * *
>
> "(e) Working without proper Union authorization, during the period of a properly approved strike in or for an establishment which is being struck by the Union or Local."

The Union took a very dim view of his non-conforming activities and after the strike invoked the disciplinary procedures in its constitution and the by-laws of Local 2336. Walsh was notified by certified mail by the chairman of the Local trial board that a hearing would be held on July 29, 1968, at a place specified, to determine if he had violated Union rules by working during the strike in April and May 1966. He was invited to attend, to select a Union member as his counsel, to produce witnesses and documentary evidence and to speak in his own behalf, and notified that if he did not appear he would be tried and sentenced *in absentia.* Walsh did not appear. The trial board heard evidence that Walsh did work during the strike and had earned $400.00 by so doing. He was fined $500.00.

Walsh did not pay the fine and, although notified of the trial board's action and his right to appeal, did not take or attempt to take any of the appeal steps given him by Art. XXI, § 4, of the Union constitution. These include appeal to a membership meeting "which may affirm or reverse the decision or reduce the penalty"; appeal from the final decision of the Local to the executive board of the Union and appeal from the decision of the executive board to the next convention of the Union.

The Union filed suit at law to enforce collection of the $500.00 fine and Judge Bowen, sitting in the Circuit Court for Prince George's County, gave judgment for the Union. We affirm the judgment.

Walsh argues that under controlling federal legislation it is an unfair labor practice for a Union to impose a fine on a Union member, that federal labor laws preempt action by a State court to enforce a fine, or at least an unreasonable fine, and, assuming there is no federal preemption, the Union cannot prevail because it seeks to enforce a penalty judicially, although the Union's governing provisions permit only suspension or expulsion as a sanction for non-payment of a fine.

The Supreme Court has left no doubt on any of these points. In *National Labor Relations Board v. Allis-Chal-*

*mers Manufacturing Company,* 388 U. S. 175, 18 L.Ed.2d 1123, 1129-1130, the Court held that the federal labor laws permit a State court to give judgment for the amount of a union fine. The Court said:

> "To say that Congress meant * * * to strip unions of the power to fine members for strike-breaking, however lawful the strike vote, and however fair the disciplinary procedures and penalty, is to say that Congress preceded the Landrum-Griffin amendments with an even more pervasive regulation of the internal affairs of unions. It is also to attribute to Congress an intent at war with the understanding of the union-membership relation which has been at the heart of its effort 'to fashion a coherent labor policy' and which has been a predicate underlying action by this Court and the state courts. More importantly, it is to say that Congress limited unions in the powers necessary to the discharge of their role as exclusive statutory bargaining agents by impairing the usefulness of labor's cherished strike weapon. It is no answer that the proviso to § 8 (b) (1) (A) preserves to the union the power to expel the offending member. Where the union is strong and membership therefore valuable, to require expulsion of the member visits a far more severe penalty upon the member than a reasonable fine. Where the union is weak, and membership therefore of little value, the union faced with further depletion of its ranks may have no real choice except to condone the member's disobedience. Yet it is just such weak unions for which the power to execute union decisions taken for the benefit of all employees is most critical to effective discharge of its statutory function."

In *Schofield v. NLRB,* 394 U. S. 423, 22 L.Ed.2d 385, the Court in effect reiterated the holdings of *Allis-Chal-*

612

*mers.* That case involved suits in the State court to collect fines levied by the union on its members. Some of those who had been fined claimed before the National Labor Relations Board that this was an unfair labor practice. The claim was rejected by the Board and by the Supreme Court, which in a footnote found at page 391 of 22 L.Ed.2d said:

> "Unless the [Union] rule or its enforcement impinges on some policy of the federal labor law, the regulation of the relationship between union and employee is a contractual matter governed by local law."

The Court said further (pp. 392-393 of 22 L.Ed.2d) :

> "A union rule, duly adopted and not the arbitrary fiat of a union officer, forbidding the crossing of a picket line during a strike was therefore enforceable against voluntary union members by expulsion or a reasonable fine. * * * Moreover, the enforcement of the rule was not carried out through means unacceptable in themselves, such as violence or employer discrimination. It was enforced solely through the internal technique of union fines, collected by threat of expulsion or judicial action."

Maryland law has long recognized the rule that a union member must exhaust the remedies open to him under the union rules before he can seek aid from the courts unless the union procedure is procedurally or substantively inadequate, fraudulent or otherwise arbitrary and illegal. If union remedies are proper and have been exhausted, courts will grant relief only from union sanctions that are fraudulent, unreasonable, illegal or arbitrary. See *Baltimore Lodge 405, International Association of Machinists v. Grand Lodge of the International Association of Machinists,* 134 Md. 355; *Long v. B. & O. R.R. Co.,* 155 Md. 265, 268, 279-280; *Martin v. United Slate Etc. Ass'n,* 196 Md. 428, 441; *Niner v. Hanson,* 217 Md. 298;

and compare *Food Fair Stores, Inc. v. Raynor,* 220 Md. 501, 507. In *Martin,* cited just above, Judge Markell for the Court (at p. 441 of 196 Md.) discussed the rule that:

> "when the tribunals of an organization, incorporated or unincorporated, have power to decide a disputed question their jurisdiction is exclusive, whether there is a by-law stating such decision to be final or not, and that the courts cannot be invoked to review their decisions of questions coming properly before them, except in cases of fraud—which would include action unsupported by facts or otherwise arbitrary. Plaintiff suggests that this rule, heretofore applied by this court principally to fraternal beneficial organizations, is not applicable to labor unions, membership in which is often practically compulsory in the pursuit of a particular livelihood. But the rule was applied, and the *Donnelly* case quoted [*Donnelly v. Supreme Council,* 106 Md. 425] in the case of 'a large and powerful labor union', the *Grand International Brotherhood of Locomotive Engineers.*"

There is nothing to show in the case before us that the Union procedures for imposing the fine or for appeal from its imposition were not entirely adequate to protect Walsh's constitutional and other legal rights. He chose not to seek to protect those rights within the Union procedures and cannot be heard in court to say that they are not effective to impose coercive discipline against him. He neither offered nor proffered evidence that the fine is unreasonable. He does claim that the Union's only remedy when he did not pay the fine was to suspend him or expel him from the Union. Again the Supreme Court has foreseen and rejected his contention. In *Allis-Chalmers* the Court said (pp. 1134-1135 of 18 L.Ed.2d):

> "And, as we have pointed out, a distinction between court enforcement and expulsion would

have been anomalous for several reasons. First, Congress was operating within the context of the 'contract theory' of the union-member relationship which widely prevailed at that time. The efficacy of a contract is precisely its legal enforceability. A lawsuit is and has been the ordinary way by which performance of private money obligations is compelled. Second, as we have noted, such a distinction would visit upon the member of a strong union a potentially more severe punishment than court enforcement of fines, while impairing the bargaining facility of the weak union by requiring it either to condone misconduct or deplete its ranks.

"There may be concern that court enforcement may permit the collection of unreasonably large fines. However, even were there evidence that Congress shared this concern, this would not justify reading the Act also to bar court enforcement of reasonable fines."

Walsh's claim that the fine is a penalty and that the courts will not enforce a penalty will not help him. In return for the benefits to be afforded him by his Union membership, Walsh signed the following promise: "I hereby request and accept membership in the [Union] and agree to abide by its Constitution and the By-laws of the Local." The constitution and by-laws provided for the imposition of a fine for their violation and the courts have added the gloss that a fine, to be judicially collectible, must be reasonable. As we see it, a reasonable fine in labor relations law may be analogized to liquidated damages and an unreasonable fine to a penalty. At no point prior to suit did Walsh challenge the right of the Union to impose the fine or its reasonableness, and only obliquely argued the point of reasonableness below and here. (He concedes that a fine based on the amount earned might be reasonable, and the fine actually levied was but $100.00 more than Walsh earned during the strike.) We

think that after the fine was duly assessed by the Union, Walsh owed the Union $500.00 and that it could enforce his monetary obligation by suit.

Judge Bowen's decision is supported not only by the decisions of the Supreme Court and of this Court but by holdings of courts of other States. See *Local 248 UAW v. Natzke* (Wisc.), 153 N.W.2d 602 (involving the fines dealt with in Allis-Chalmers), and *North Jersey Newspaper Guild Local No. 173 v. Rakos* (N. J. Super. App. Div.), 264 A. 2d 453.

*Judgment affirmed, with costs.*