COMMUNICATIONS WORKERS OF AMERICA LOCAL 7400, APPELLEE, V. JOANN ABRAHAMSON ET AL., APPELLANTS, BONNIE ANGLETON ET AL., APPELLEES.

422 N.W.2d 547

Filed April 29, 1988.   No. 86-349.

Patrick J. Barrett, for appellants.

Thomas F. Dowd of Dowd, Fahey & Dinsmore, for appellee Communications Workers of America Local 7400.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and BLUE, D.J.

HASTINGS, C.J.

The Communications Workers of America Local 7400 (the union) sought judicial enforcement of fines it imposed against approximately 70 of its members (the defendants). The municipal court of Omaha (now merged with the county court for Douglas County) dismissed the union's petitions. The union appealed to the district court for Douglas County, which reversed the orders of dismissal and reinstated the fines, plus costs, for the majority of the appealed cases. Thirty-seven of the defendants have appealed to this court. All of the cases were consolidated for the purposes of this appeal. We affirm.

The assignments of error may be classified as follows: The

district court failed (1) to find that the union could not enforce fines imposed under its constitution in a court of law; (2) to find that the fines were in fact penalties and therefore not enforceable; (3) to find that the fines were unreasonable; (4) to find that the trials by the union were not conducted within the requirements of its constitution; and (4) to find that the imposition of the fines was not supported by the evidence.

The review of questions of fact from the municipal court to district court is controlled by Neb. Rev. Stat. § 24-541.06(1) (Reissue 1985), which provides in part that "the district court shall review the case for error appearing on the record made in the county court or on the record made, if prior to July 1, 1985, in the municipal court." Such is also the scope of review in this court. Neb. Rev. Stat. § 25-1911 (Reissue 1985). See, also, *Kuehl v. Diesel Power Equip. Co., post* p. 353, 422 N.W.2d 361 (1988). Additionally, § 24-541.06 provides that if the district court determines to reverse the case, it may enter judgment in accordance with its findings. Findings of fact made by the trial court will not be set aside unless clearly wrong. *Nekuda v. Waspi Trucking, Inc.*, 222 Neb. 806, 388 N.W.2d 438 (1986).

Regarding questions of law, this court has an obligation to reach its conclusion independent from the conclusion reached by a trial court. *In re Estate of Ritter*, 227 Neb. 641, 419 N.W.2d 521 (1988). In other words, regardless of the scope of review, the Nebraska Supreme Court has an obligation to reach an independent conclusion on a question of law. *Buell, Winter, Mousel & Assoc. v. Olmsted & Perry*, 227 Neb. 770, 420 N.W.2d 280 (1988).

The first assignment of error deals with the issue of whether a union-imposed fine may be judicially enforced, and is a question of law.

Section 1 of article XIX of the union's constitution provides in pertinent part as follows:

> Members may be fined, suspended or expelled by Locals in the manner provided in the Constitution for any of the following acts:
>
> . . . .
>
> (e) Working without proper Union authorization,

> during the period of a properly approved strike in or for an establishment which is being struck by the Union or Local....

There seems to be little question but that from August 7 to 28, 1983, the union was involved in a strike against Northwestern Bell Telephone Company. Also, approximately 150 of the union members crossed the picket lines and returned to work without approval by the union during that time. The defendants were included within those members. Pickets of the union reported the names of those union members, including the defendants, who crossed the picket lines. These names were turned over to union officials. On September 29, 1983, the prosecutor appointed by the union to conduct the trial of the defendants notified the defendants and others, by mail, that they had been charged with violating the union's constitution. A copy of the filed charge, signed and sworn to by the accuser, was attached.

The union's hearings, or trials, were held on October 14, 1983, with two additional dates available for those who could not be there on the scheduled date. The final trial was on November 1, 1983. Although approximately 120 individuals were charged, only about 13 showed up for their trials.

The trial panel consisted of five members selected by the union. For those members found guilty of working during the strike, the panel assessed a fine equivalent to a day's gross wages for each day worked during the strike.

As previously noted, the union brought actions in the Omaha Municipal Court against approximately 70 fined members who refused to pay. The actions were consolidated for trial, but were heard in two divisions. The division I trial, consisting of all members represented by present appellate counsel, was heard February 25 and 26, 1985. The division II trial, consisting of all other members, was heard February 26 and 27 and March 6, 1985. After hearing testimony, the court took the cases under advisement. On April 1, 1985, the court issued its orders dismissing the union's petitions. The municipal court's problem with the imposition of the fines, in essence, was that a member would not necessarily understand the full extent of his liability by merely being informed that he could be fined for crossing the

picket line.

The union appealed to the district court for Douglas County, and on March 18, 1986, it reversed the order of the municipal court as to the majority of the appealed cases. Apparently, the remaining cases were dismissed, as the evidence revealed that those employees had attempted to resign from the union prior to crossing the picket line. The district court held that the union trial hearings were conducted according to the union constitution and that due process was afforded each member on trial; furthermore, the members who chose not to attend their trials or utilize union appeal procedures could not now complain of the procedure used if that procedure was in compliance with the union constitution. Lastly, the court found that the penalties imposed were reasonable. This appeal followed.

According to the appellants, the union's constitution provides for the exclusive remedies of fines, suspension, or expulsion when a union member violates it by crossing a picket line. Since the constitution does not expressly provide for judicial enforcement, they argue that it is not an available option. Furthermore, as a matter of public policy, they say the courts should not interfere in the affairs of voluntary organizations.

The union asserts that the appellants have misinterpreted the provisions of the union's constitution, and makes reference to several cases in which judicial enforcement of union sanctions was approved.

Perhaps the leading case considering the issue of judicial enforcement of union-imposed fines is *NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 87 S. Ct. 2001, 18 L. Ed. 2d 1123 (1967). Specifically, the question in that case was whether a union which imposed fines for crossing the picket line committed an unfair labor practice by bringing suit for the collection of the fines. The Court held that it did not.

The Court noted that the union-member relationship is contractual in nature and that the courts may enforce such a contract. Although the appellants now argue that the union constitution does not specifically provide for court enforcement, and thus must not allow it, the Supreme Court

considered this very argument and expressly rejected it:

> [T]he potentiality of resort to courts for enforcement is implicit in any binding obligation. Surely it cannot be said that the absence of a "court enforceability" clause in a contract of sale implies that the parties do not foresee resort to the courts as a possible means of enforcement.

*Id.* at 182 n.9. Further explaining the contractual nature of union membership, the Court stated: "The efficacy of a contract is precisely its legal enforceability. A lawsuit is and has been the ordinary way by which performance of private money obligations is compelled." *Id.* at 192.

The appellants attempt to distinguish *Allis-Chalmers* on the basis that the fined members in *Allis-Chalmers* were "full members" of the union, while the appellants are merely "financial members." However, the union is correct in its response to this argument; i.e., the "financial member only" argument is inapplicable to this situation, and the appellants have misrepresented the evidence in this regard. There simply is no evidence that the union distinguished between "full members" and "financial members."

The Supreme Court further considered the matter of court enforceability of union fines in *NLRB v. Boeing Co.*, 412 U.S. 67, 93 S. Ct. 1952, 36 L. Ed. 2d 752 (1973). The Court once again noted that the relationship between a union and its members is contractual in nature, and upheld the state court's right to apply local law in enforcing the relationship.

*Local 248 UAW v. Natzke*, 36 Wis. 2d 237, 153 N.W.2d 602 (1967), was a case arising out of the Allis-Chalmers strike. In *Natzke*, the appellant crossed the picket line and was fined by the union. The appellant did not disagree that the union's constitution constituted a contract, but argued that since the contract only specified the remedies of expulsion or suspension, such remedies were exclusive. The Wisconsin court rejected this argument, relying on *Allis-Chalmers*. The court cited general contract principles for the proposition that even if the contract expressly provides for certain remedies in the case of breach, that does not deprive the injured party of the right to resort to the usual legal remedies of suing for damages for breach of contract. The court concluded: "We hold that when appellant

was fined $100 by plaintiff union, a binding obligation in the form of a debt was created which was subject to collection by court action." 36 Wis. 2d at 251, 153 N.W.2d at 609-10. The holding in *Natzke* was approved by the Wisconsin court in *Local 4453, USA, AFL-CIO v. Wilson*, 88 Wis. 2d 699, 277 N.W.2d 809 (1979), and *UAW, Local 283 v. Scofield*, 50 Wis. 2d 117, 183 N.W.2d 103 (1971).

The New Jersey Superior Court relied in part on *Natzke* and *Allis-Chalmers* in reaching its decision in *North Jersey Newspaper Guild v. Rakos,* 110 N.J. Super. 77, 264 A.2d 453 (1970). The defendant was charged, among other things, with violating the picket line during the strike. The court held: "We incline to the view that the foregoing rule [that the union constitution constitutes a contract, the breach of which is enforceable in state courts] comports with reason and logic and should apply here." *Id.* at 85, 264 A.2d at 457.

The instant case is not the first case to consider the construction of the Communications Workers of America (CWA) constitution. The union brought suit in the Maryland courts to collect a fine imposed against a member for working during a strike in *Walsh v. CWA, Local 2336*, 259 Md. 608, 271 A.2d 148 (1970). Walsh's argument was that "the Union cannot prevail because it seeks to enforce a penalty judicially, although the Union's governing provisions permit only suspension or expulsion as a sanction for non-payment of a fine." 259 Md. at 610, 271 A.2d at 149. Citing *NLRB v. Allis-Chalmers Mfg. Co.,* 388 U.S. 175, 87 S. Ct. 2001, 18 L. Ed. 2d 1123 (1967), the court held that "the Supreme Court has foreseen and rejected his contention." 259 Md. at 613, 271 A.2d at 151. The court also relied on *Natzke, supra*, and *Rakos, supra*, in enforcing the fine against Walsh.

The CWA constitution (specifically, article XIX providing for fines, suspension, or expulsion) was also the subject of *Jost v. Communications Workers of America*, 13 Cal. App. 3d Supp. 7, 91 Cal. Rptr. 722 (1970). The picket-crossing member claimed that the fine was not enforceable in state court. The court found *Natzke* and *Rakos* to be directly on point and upheld the right of the union to seek court enforcement of the fine. Under similar facts, a California court affirmed that

ruling 5 years later: "A labor union may impose reasonable monetary fines to compel participation in a lawful strike, and the courts will enforce these fines if they were authorized by the union constitution or rules . . . ." *Posner v. Utility Workers Union of America*, 47 Cal. App. 3d 970, 974, 121 Cal. Rptr. 423, 425 (1975).

The appellants urge reliance on *United Glass Workers etc. v. Seitz*, 65 Wash. 2d 640, 399 P.2d 74 (1965). In *Seitz*, the union member was fined for working behind the picket line. The court denied the union the opportunity to judicially enforce the fine. The union's constitution expressly provided for the suspension or expulsion of any member who failed to pay a fine assessed against him. This court held that this express provision created a presumption that the union intended suspension or expulsion to be the *only* remedies for nonpayment of fines.

However, the decision in *Seitz* is inapplicable to the present case. The constitution in *Seitz* provided an exclusive remedy for nonpayment of union-imposed fines. The CWA constitution contains no such provision. Article XIX provides sanctions for, inter alia, working during a strike, but does not expressly provide for a remedy if the sanctions are not followed. The CWA constitution never reaches the problem of noncompliance with union sanctions, as the constitution in *Seitz* did.

The court in *Jost, supra*, considered the applicability of the *Seitz* case to a CWA case and stated:

> *United Glass Workers v. Seitz, supra*, is the only case found or cited by counsel that refuses to enforce a fine that has been properly imposed after a fair determination. It should be noted that the Washington court does recognize the validity of the fine. Its judgment is based entirely on the specific terms of the union constitution which provides for suspension or expulsion of a member who refuses to pay the fine. . . . The constitution of the Communications Workers of America has no provision similar to the one considered by the Washington court. That case is distinguishable from ours.

13 Cal. App. 3d at Supp. 11-12, 91 Cal. Rptr. at 725. Likewise, the court in *Local 248 UAW v. Natzke*, 36 Wis. 2d 237, 153 N.W.2d 602 (1967), declined to follow *Seitz*, deeming *Seitz* to be

a "minority viewpoint." 36 Wis. 2d at 252, 153 N.W.2d at 610.

Lastly, the appellants maintain that the courts should not interfere in the affairs of a voluntary association. They cite *Straub v. American Bowling Congress*, 218 Neb. 241, 353 N.W.2d 11 (1984), as authority for the proposition that courts will not interfere with the internal affairs of an association. While this may be true in general, *Straub* also says more: "While courts generally do not interfere with the internal affairs of a voluntary association, *an action may be maintained for breach of contract if it can be shown that defendants violated the contractual terms of membership.*" (Emphasis supplied.) *Id*. at 244, 353 N.W.2d at 13. Obviously, this is such a situation. Furthermore, it is unclear how lack of judicial intervention would *benefit* the appellants. Without court review, the appellants would lose any chance they might have of being relieved of their responsibility to pay the fine.

*Straub* limits the court's review to a determination as to whether the voluntary association's actions were consistent with its own rules, fair to the individual, prompted by proper motives, and in accordance with public policy and the law. The errors assigned by the appellants deal with just these issues. Based on judicial precedent, it is clear that this court may review the imposition and validity of the fines.

The appellants argue that the fines were penalties, not liquidated damages, and therefore unenforceable. They contend that the fines are not liquidated damages because they do not bear a reasonable relationship to the actual loss sustained by the union, and because there is no clause in the union constitution providing for liquidated damages.

This argument was considered in *UAW, Local 283 v. Scofield*, 50 Wis. 2d 117, 134, 183 N.W.2d 103, 112 (1971), wherein the court resolved: "The argument unrealistically assumes the equivalency of an ordinary commercial contract and the union membership contract. . . . [T]he levying of a fine was not merely the collection of damages, but was related to the power of a labor organization 'to enforce solidarity among its members.' "

The appellants further contend that the fines were unreasonable because they constituted a total work deterrent,

because the members were not aware that they might be fined, because the members were economically forced to return to work, and because the fines were arbitrarily imposed.

The union argues that the formula for determining the fines was established to *avoid* arbitrary fines. The union also maintains that the issue of "reasonableness" is a matter for the state courts to determine, and directs our attention to cases in which only unreasonable fines were considered penalties.

The U.S. Supreme Court has said that " '[t]he reasonableness of the fines is a matter for the state court to determine should the Union seek judicial enforcement of the fines.' " *NLRB v. Boeing Co.*, 412 U.S. 67, 74 n.9, 93 S. Ct. 1952, 36 L. Ed. 2d 752 (1973), citing *U. O. P. Norplex, Div. of Universal Oil Prod. Co. v. N.L.R.B.*, 445 F.2d 155 (7th Cir. 1971). The Court then went on to cite several cases in which "state courts applying state law [were] quite willing to determine whether disciplinary fines [were] reasonable in amount." 412 U.S. at 76. These cases included *North Jersey Newspaper Guild v. Rakos*, 110 N.J. Super. 77, 264 A.2d 453 (1970); *Walsh v. CWA, Local 2336*, 259 Md. 608, 271 A.2d 148 (1970); *Local 248 UAW v. Natzke*, 36 Wis. 2d 237, 153 N.W.2d 602 (1967); and *Jost v. Communications Workers of America*, 13 Cal. App. 3d Supp. 7, 91 Cal. Rptr. 722 (1970). The Court suggested that state courts are well suited to determine the reasonableness of fines, as they "are often able to draw on their experience in areas of the law apart from labor relations." 412 U.S. at 77.

In order to determine whether the fines were reasonable (and thereby determine whether the fines were "penalties" or "liquidated damages"—see *Walsh v. CWA, Local 2336, supra*), it is helpful to consider the record.

The fines were calculated by assessing 1 day's gross wages for each day worked during the strike. This formula was devised by the trial panel before the hearings. The panel felt that the formula was the most reasonable and evenhanded way to fine the members and that in order to treat all of the individuals equally, the panel would not take into account any deductions which the member may have had taken out of his gross paycheck. The panel did, however, have the authority to

consider other factors in reaching its final decision regarding the fine. For instance, the panel could consider the testimony given by the member at his hearing if he gave adequate reasons for resuming work during the strike, if there were medical reasons for crossing the picket line, or if there were any other particular hardships to be taken into account. The trial panel had the authority to decide not to fine members at all if good reasons were given.

The district court, upon being presented with this evidence, found: "In each case the penalty imposed was roughly equivalent to a day's wages for every day that the defendant was found to have earned a day's wages by crossing the line. This court cannot say that such a penalty is not reasonable."

A similar fine was handed out in *Walsh v. CWA, Local 2336, supra*. Walsh was fined $500 for crossing the picket line, during which time he earned $400. Walsh claimed that the fine was a penalty and that the courts will not enforce a penalty. The court stated that this argument "will not help him." 259 Md. at 614, 271 A.2d at 151. The court found that "a fine, to be judicially collectible, must be reasonable. As we see it, a reasonable fine in labor relations law may be analogized to liquidated damages and an unreasonable fine to a penalty." *Id*.

The fined member also challenged the amount of the fine imposed in *North Jersey Newspaper Guild v. Rakos, supra*. The court noted that the union constitution authorized the imposition of a fine and that under *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 87 S. Ct. 2001, 18 L. Ed. 2d 1123 (1967), that fine should not be " 'unreasonably large.' " 110 N.J. Super. at 91, 264 A.2d at 460. The court then concluded:

> While the fine, $500, is characterized by defendant as high, there is no showing in the record that it was unreasonable, or the mere fiat of a union leader. See Scofield v. NLRB, *supra*, 394 U. S., at 430, 89 S. Ct. 1154. The trial judge did not find it to be excessive "in view of the nature of the offenses * * * the manner in which defendant profited from them and * * * in view of current economic conditions." We find no cause to disturb his conclusions. . . . Defendant not only earned income during the period involved but was the recipient of a

substantial promotion at its end. One of the purposes of the fine was to serve as a deterrent to others who might be inclined to dilute the union's bargaining power by defying its legitimate directives.

110 N.J. Super. at 91, 264 A.2d at 460-61.

The fines and the manner in which they were determined appear to be reasonable. Some members worked almost every day of the strike, while others worked only the last day. The panel's formula took such differences into account. Furthermore, the members were given the opportunity to tell the panel their reasons for returning to work and to have the panel take those reasons into consideration when setting the final fine. Unfortunately, most members chose not to use this opportunity. Under the reasoning of *Walsh*, these reasonable fines may be considered liquidated damages enforceable by the courts.

The appellants assert that the fines must be set aside, as they do not bear a reasonable relationship to the actual damages suffered by the union as a result of the appellants' returning to work. However, the actual damages to the union are impossible to ascertain. It is just such a situation that liquidated damages are intended to cover. As the court held in *UAW, Local 283 v. Scofield*, 50 Wis. 2d 117, 134, 183 N.W.2d 103, 112 (1971), "It is obvious that the measure of damages is difficult to ascertain, however real the damage is to the union which seeks to protect its members from the damages of [unfair labor practices]. . . . This is precisely the type of situation where liquidated damages, if reasonable, are appropriate." That the fines may indeed have had a punitive effect in no way lessens their effect in deterring future strikebreakers and in impressing upon union members the importance of solidarity. The amount of the fines assessed was based on a reasonable calculation and should be upheld.

The appellants contend that the union trials held in October and November 1983 "were conducted in a manner inconsistent with the constitution's provisions" and that they were denied a "fair and impartial trial" as a result. Brief for Appellants at 22. The union constitution, they assert, provides for several requirements which were not met, specifically: The charges were not "submitted" within 60 days, and the appellants were

denied the right to cross-examine the witnesses. Furthermore, the appellants did not see the constitution and were thus unaware of the possibility of being sanctioned for crossing the picket line, and the triers of fact did not themselves understand the meaning of "willfully" or "due process."

Regarding the submission of the charges, the union constitution provides that the written charges must be submitted within 60 days of the time the accuser becomes aware of the alleged offense. The "accuser" testified that he brought the charges against the individuals according to the constitution's provisions. On September 29, 1983, the "prosecutor" notified the members by mail that they had been charged with violating the union's constitution. A copy of the filed charge, signed and sworn to by the accuser, was attached.

The union contends that this written charge, which was properly signed, sworn to, filed, and sent to the individual, was "submitted" at that date, i.e., September 29, 1983, well within the 60-day limit (the strike took place from August 7 to 28, 1983). The appellants contend that the charges were not "submitted" until the trial on October 14, 1983, and, accordingly, no member could be held liable for conduct occurring prior to August 14, 1983. Although the appellants insist that "[a]ll three Union witnesses testified that the charges were 'submitted' at trial on October 14, 1983," they make no reference to the record in this regard. Brief for Appellants at 23. What little testimony there is, is ambiguous. However, the prosecutor explained that the charges were written up by the accuser and sent out to the charged members, and then at trial the prosecutor "read all the names that we charged, and then if anybody was there, then they spoke."

It is apparent that the witnesses were unsure as to the precise meaning of the term "submitt[ing]" the charges as it is used in the union's constitution. It is true that the witnesses appeared to agree that the charges were not submitted until they were read by the "prosecutor" at trial. However, a commonsense contextual reading of the constitution leads to the conclusion that the charges were submitted at the time that they were made out by the accuser and filed with the union. Article XX, § 2, of the constitution provides that the charges shall be in writing,

signed and sworn to by the accuser, and filed with the recording officer of the local. Section 2 further provides that the charges shall contain the facts and the dates of the offense, and shall be submitted within 60 days of the time the accuser becomes aware of the offense. Read as a whole, it seems logical that the charges are "submitted" at the time they are made out and filed with the local office.

The appellants also argue that they were denied the right of cross-examination at their trials. One obvious flaw in this argument, of course, is that only 2 of the 37 appellants even *attended* their trials. The others should not now be allowed to complain that they were denied the right of cross-examination. Furthermore, there is no evidence that any of the charged members who did attend their trials were denied the right to cross-examine the witnesses against them.

In each trial, the union's witness was the accuser, who stated what dates the member allegedly worked during the strike. Appellant Merritt Stinson, who attended his trial, did not attempt to exercise his right to cross-examine the various witnesses, although he had been informed by mail of his right to do so. Mary Gautier, the other appellant who attended her union trial, also did not attempt to exercise her right to cross-examine the union's witnesses. The members were not denied the opportunity to cross-examine the union's witnesses.

The appellants contend that they were never given copies of the union constitution "and therefore had no knowledge that the union had forbade its members to cross picket lines or that they could be subject to fines." Brief for Appellants at 23. However, a copy of the union constitution was available for any member who requested it. The accuser testified that none of the members had ever requested and been denied a copy of the constitution. One of the five appellants who testified at the municipal court hearings specifically stated that she had never asked to see the constitution; the other four did not mention it.

The appellants argue that since they had not seen the constitution, they could not be convicted of violating its provisions. Once again, the appellants did not see the constitution only because they chose not to. Furthermore, it is

very apparent from the testimony that the members were aware that the union did not approve of their returning to work.

In short, the union trials were conducted fairly and in accordance with the provisions of the union's constitution. Although the municipal court found fault with the fine calculation process, it went on to state that the appellants' due process rights had not been violated by the trial procedures. The district court, with which we agree, on appeal observed that "the union trial hearings were conducted in substantial compliance with the union constitution" and that the appellants' due process rights had not been violated.

As discussed in the section of this opinion dealing with the issue of "liquidated damages v. penalties," we agree that the fines were reasonable under the circumstances and are therefore supported by the evidence.

The judgments of the district court are affirmed.

AFFIRMED.