NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3646-13T1

SHEET METAL WORKERS' INTERNATIONAL
ASSOCIATION LOCAL UNION 22,

    Plaintiff-Respondent,

v.

RAYMOND KAVANAGH,

    Defendant-Appellant/
    Third Party Plaintiff,

v.

DAVID CASTNER, THOMAS FISHBACK,
JAMES O'REILLY, CHARLES BEELITZ,
RICHARD KING, THOMAS GALLAGHER,
JAMES SHARKEY, JOHN KEENAN,
ALAN "BRUCE" PAK, JOHN CALIGUIRE,
WILLIAM BUCHANAN,

    Third-Party Defendants.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 13, 2015**
>
> **APPELLATE DIVISION**

        Argued September 29, 2015 — Decided November 13, 2015

        Before Judges Fisher, Espinosa, and Currier.

        On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3445-12.

        Dominick Bratti argued the cause for appellant (Wilentz, Goldman & Spitzer, P.A., attorneys; Mr. Bratti, of counsel and on the briefs; Annemarie T. Greenan, on the briefs).

Mark E. Belland argued the cause for respondent (O'Brien, Belland & Bushinsky, LLC, attorneys; Mr. Belland, of counsel; David F. Watkins, Jr., on the brief).

The opinion of the court was delivered by

CURRIER, J.S.C. (temporarily assigned).

In this appeal, we consider the factors to be applied by a trial judge in determining the reasonableness of a fine imposed by a union for the violation of its constitution. Defendant Raymond Kavanagh appeals the April 9, 2014 order granting summary judgment to plaintiff Sheet Metal Workers' International Association Local Union 22 (Local 22) and confirming the fines imposed against him by the union in this matter. After reviewing the record in light of the contentions raised on this appeal, we affirm the judge's ruling as to Kavanagh's violations of the union constitution, but remand for the trial judge to determine the reasonableness of the fine imposed, giving due consideration to the factors we set forth in this opinion.

Kavanagh was a long-time member of Local 22. In 1997, he became an owner of Quality Sheet Metal and Welding Inc. which was not a signatory to a collective bargaining agreement. In July 2011, Kavanagh was charged with violating the union's constitution because he was not an employee or employer bound by the collective bargaining agreement with Local 22. Kavanagh resigned his membership the following month. He was informed

that a trial would be held in October 2011. Kavanagh responded that he was not subject to the union's jurisdiction because he had resigned his membership and because he was not permitted to bring outside counsel with him to the hearing. Following the conclusion of the trial, at which Kavanagh did not appear, he was found to have violated six provisions of Local 22's constitution and was assessed a fine of $115,000.

A civil suit was filed to enforce the union judgment. Summary judgment was granted to Local 22 and the fines were confirmed. This appeal ensued.

On appeal, Kavanagh alleges numerous errors in the trial judge's ruling on the motion for summary judgment. We deem it necessary to only address the following arguments: Kavanagh contends he was not subject to Local 22's jurisdiction as he had resigned his membership, and his due process rights were violated when he was not permitted to have counsel with him at the hearing. Aside from the reasonableness of the fines, which we address below, we do not find the remainder of the arguments meritorious of discussion in a written opinion. R. 2:11-3(e)(1)(E).[1]

---

[1] Kavanagh contended that the trial court 1) applied the wrong standard of review in motions regarding the complaint, counterclaims and third party complaint; 2) failed to review de

(continued)

The relationship between a member and a union is a contractual one; the union's bylaws and constitution are the contract, and the contract is enforceable in state court. N. Jersey Newspaper Guild v. Rakos, 110 N.J. Super. 77, 84 (App. Div.), certif. denied, 56 N.J. 478 (1970). A union must discipline members "in accordance with their constitutions and bylaws." Id. at 88 (quoting Dudek v. Pittsburgh City Fire Fighters, 228 A.2d 752, 756-57 (Pa. 1957)).

Kavanagh argues that his resignation was effective upon its receipt,[2] and he was, therefore, not subject to the union's discipline. When a violation occurs before the resignation, however, the member is still subject to the union's jurisdiction. Article Eighteen of Local 22's Constitution and Ritual provides for the discipline and sanction of former members.[3] "[A] union member must leave the union prior to his

_____

(continued)
novo the union's decision; and 3) erred in holding that he failed to exhaust internal remedies.

[2] "Any member may resign from membership. Resignations shall be effective upon receipt of written notification by mail or hand delivery to any full-time officer or business representative at his or her local union." Constitution and Ritual of the Sheet Metal Workers Association, Art. 16, § 14.

[3] "[A] suspended member and, also, a former member who has been expelled, or has resigned in accordance with Section 14 of Article Sixteen (16), shall be permitted to appear before a local union trial committee or an International Trial Board to
(continued)

violation of the union's rule if he is to avoid being disciplined therefor." Newspaper Guild, supra, 110 N.J. Super. at 88. Thus, the trial judge properly ruled that the union had jurisdiction to impose disciplinary action against Kavanagh.

Article Eighteen also provides authority for an accused party to select any good standing member of his or any other local union as his counsel. Although this specific issue has not been addressed by a New Jersey court, we again note that the provisions set forth in a union's constitution form a contract between the union and its members. The provisions establish the procedure for an internal trial and appeal and include punishable conduct. "[T]he courts' role is but to enforce the contract." NLRB v. Allis-Chambers Mfg. Co., 388 U.S. 175, 182, 87 S. Ct. 2001, 2008, 18 L. Ed. 2d 1123, 1129 (1967).

Unions have a significant interest in controlling their disciplinary proceedings; therefore, outsiders are prohibited from appearing at the proceedings as there is no ability to control their conduct. Local 22 had no contempt power or other authority to control a non-union member's conduct in its proceedings. Other jurisdictions have addressed this provision

---

(continued)
defend against charges preferred against him or her . . . ." Id. at Art. 18, § 1(a).

and found that union members are not entitled to outside counsel during disciplinary trials. Cornelio v. Metro. Dist. Council, 243 F. Supp. 126, 128 (E.D. Pa. 1965) (upholding a union provision which only permitted a union member to be represented by another union member at a hearing), aff'd, 358 F.2d 728 (3d Cir. 1966), cert. denied, 386 U.S. 975, 87 S. Ct. 1167, 18 L. Ed. 2d 134 (1967); see United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 385 (2d Cir. 2001) ("Not all of the due process protections available in the federal courts apply to union disciplinary proceedings."); Frye v. United Steelworkers of Am., 767 F.2d 1216, 1224 (D.C. Cir.), (federal law does not require union disciplinary hearings to include all the protections regarding judicial proceedings, including representation by an attorney), cert. denied, 474 U.S. 1007, 106 S. Ct. 530, 88 L. Ed. 2d 461 (1985); Curtis v. Int'l Alliance of Theatrical Stage Emps. & Moving Picture Mach. Operators, 687 F.2d 1024, 1029 (7th Cir. 1982) (upholding the decision to not allow plaintiff the representation of a lawyer at a union hearing); Buresch v. Int'l Bhd. of Elec. Workers, 343 F. Supp. 183, 191 (D. Md. 1971) ("Neither the Sixth Amendment to the United States Constitution nor [federal law] guarantees a union member the right to be represented by legal counsel in union disciplinary proceedings."), aff'd o.b., 460 F.2d 1405 (4th Cir. 1972).

We find, that as a member of Local 22, Kavanagh bound himself to the provisions of its constitution. He was therefore not entitled to be represented by outside counsel at the trial.[4] Kavanagh was given the opportunity to appear and be heard; he chose not to avail himself of that right.

A trial judge's review of internal union functions is limited. "[W]here the proceedings within the organization have been regular, fair, and free from fraud, and the party whose rights are involved has been given the opportunity to appear and be heard, the courts will not inquire into the merits of the case or review the action of the association . . . . " Lewis v. Am. Fed'n of State, Cnty. & Mun. Emps., 407 F.2d 1185, 1193 (3d Cir.), cert. denied, 396 U.S. 866, 90 S. Ct. 145, 24 L. Ed. 2d 120 (1969). "'[A]lthough the courts may be without power to review matters of credibility or of strict weight of the evidence, a close reading of the record is justified to insure that the findings are not without any foundation in the evidence.'" Id. at 1195 (quoting Vars v. Int'l Bd. of Boilermakers, 320 F.2d 576, 578 (2d Cir. 1963)). Mindful of that admonition, we address the issue of the fines imposed against Kavanagh as a result of the violations.

---

[4] We note there are no restrictions on a member's right to consult with an attorney in preparation for the hearing.

The constitution of the union authorizes the imposition of a fine. In a suit brought by the union, the judge is to make a determination as to whether the fine was arbitrarily imposed and unreasonable in amount before enforcing it. Under Allis-Chambers, supra, 388 U.S. at 192, 87 S. Ct. at 2013, 18 L. Ed. 2d at 1134, it should not be "unreasonably large." The judge has the authority to reduce the fine if appropriate. Newspaper Guild, supra, 110 N.J. Super. at 91.

New Jersey courts have not addressed the issue of what constitutes an "unreasonably large" union fine since 1970. In Newspaper Guild, the union brought several charges against the defendant for improper activities during a strike; the defendant had continued to earn income and received a promotion at the company after the strike ended. Id. at 80. The judge analyzed the challenged fine under the conditions present when the fine was levied: the nature of the offenses, how the defendant profited from the offenses, and the current economic conditions. Id. at 91. The judge also looked to the inflationary climate that existed in 1970 when assessing the reasonableness of the fine. Ibid. Finally, the judge noted that the fine had a punitive purpose that "was to serve as a deterrent to others." Ibid. The judge confirmed the fine using these factors and

found it to be sufficiently related to the conduct of the defendant. Ibid.

Other jurisdictions looking at this issue have added other factors to the analysis. In CWA Local 7400 v. Abrahamson, 422 N.W.2d 547, 549 (Neb. 1988), the union sought to enforce judgment of fines it had imposed against seventy of its members for their activity during a strike. The fines had been calculated using the gross wages earned by the member for each day worked during the strike. Id. at 553.

In considering the fine, the Nebraska Supreme Court looked at the "reasonable relationship" between the fines and the conduct that led to the penalty. Ibid. It noted that any punitive effect the fines might have "in no way lessens their effect in deterring future strikebreakers and in impressing upon union members the importance of solidarity." Id. at 554. Finally, the Abrahamson court recognized that liquidated damages are appropriate in these types of union disputes as "the actual damages to the union are impossible to ascertain. It is just such a situation that liquidated damages are intended to cover." Ibid.

Ohio has established a comprehensive analysis to determine whether fines are "unreasonably large." Int'l Bhd. of Elec. Workers, Local Union No. 986 v. Smith, 602 N.E.2d 782 (Ohio Ct.

App. 1992). In Smith, the defendant was fined $5,000 after voluntarily informing her employer that a fellow union member intended to falsify her timesheet, a violation of the union constitution. Id. at 783-84. The court began its analysis by noting "[t]he severity of the fine alone or its punitive effect, however, is not tantamount to . . . unreasonableness." Id. at 788. It then set forth the following eight factors to be used when analyzing the reasonableness of the fine:

> 1) methods and formulas used for calculation, (2) the member's conduct for which the fine was imposed, (3) income of the member, (4) amount of fine, (5) resulting harm or damage to the union or its other members, (6) nature of offenses being punished, (7) manner and extent to which the member benefited or profited, and (8) the current economic conditions.
>
> [Ibid. (citations omitted).]

In Newspaper Guild, supra, 110 N.J. Super. at 91, we recognized that it was appropriate for a fine to "serve as a deterrent to others who might be inclined to dilute the union's bargaining power by defying its legitimate directives." To properly redress the violative conduct, however, the fine must be connected to the violations. We therefore find that in determining the reasonableness of a union-imposed fine, the trial judge should consider relevant factors, including the following: 1) the conduct for which the fine was imposed; 2)

the extent to which the member benefited or profited; 3) the calculation of the fine; 4) the harm to the union and its members; and 5) the current economic conditions. We believe these factors provide the necessary framework for judges to make the required assessment of union-imposed fines.

In light of the above ruling, we remand the matter for the trial judge to consider the factors we have set forth in making a determination as to the reasonableness of the fines imposed by the union. We affirm the judge's rulings on the remaining arguments.

Affirmed in part, remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3646-13T1